IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT AVALOS,<br><br>                  Petitioner,<br><br>    vs.<br><br>STU SHERMAN, Acting Warden,<br>California Substance Abuse Treatment<br>Facility and State Prison,[1]<br><br>                  Respondent. | No. 2:11-cv-02234-JKS<br><br>MEMORANDUM DECISION |

Albert Avalos, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Avalos is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the Substance Abuse Treatment Facility and State Prison in Corcoran, California. Respondent has answered, and Avalos has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Avalos was charged with failing to register as a sex offender (count 1), resisting a peace officer (counts 2 and 3), and providing false information to a peace officer (count 4). The information also alleged as to count 1 that Avalos had suffered two prior strike convictions for lewd and lascivious acts with a minor and had served two prior prison terms.

---

[1]     Stu Sherman, Acting Warden, California Substance Abuse Treatment Facility and State Prison, is substituted for Kathleen Allison, Former Warden, California Substance Abuse Treatment Facility and State Prison. FED. R. CIV. P. 25(d).

-1-

Avalos pled guilty to count 1 and admitted the associated allegations in return for the dismissal of the remaining counts. He then filed a motion to strike one or both of his prior convictions for sentencing purposes pursuant to *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996).[2] At sentencing, the trial court denied Avalos's *Romero* motion and imposed a state prison term of 25 years to life.

On direct appeal, the Court of Appeal summarized the facts of this case as follows:

> In July or August 2005, a confidential informant told an officer that a person wanted by the police was living at an address in Woodland under the name "Primo." In late August or early September 2005, officers went to the address, where the homeowner directed them to a person who called himself Primo but said his real name was Jesse. Investigation of the last name and date of birth he provided disclosed no warrants, and local records showed nothing; therefore the officers did not detain him. In November 2005, however, a confidential informant said Primo was really Albert Avalos of Sacramento. Recognizing [Avalos] from a California ID photo, the police took him into custody; he continued to give the false name Jesse and resisted arrest. He was detained on misdemeanor charges and a parole violation. Thereafter, a parole agent told the police that [Avalos] was a registered sex offender from Sacramento who had not registered in Woodland; he was then charged with that offense as well. An officer determined that [Avalos's] Woodland address was 56 yards from a middle school.
> Before the sentencing hearing, the Yolo County Probation Department furnished the trial court [with] the Sacramento County Probation Department's report from [Avalos's] 1992 Sacramento County case, in which he pled guilty to five counts of violating [California Penal Code] section 288, subdivision (a), between December 23, 1987, and March 1, 1992, and admitted an allegation of substantial sexual conduct (§ 1203.066, subd. (a)(8), (9)) as to one count. According to that probation report, [Avalos] began to molest the victim, his stepdaughter, when she was six years old, and continued for four years.

---

[2] Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law; a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case. *Romero*, 917 P.2d at 632. A trial court's failure to dismiss or strike a prior conviction is reviewed for abuse of discretion. *People v. Carmony*, 92 P.3d 369, 374 (Cal. 2004). "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." *Id.* at 377.

**The sentencing hearing**

[Avalos] presented four witnesses in support of his *Romero* motion: his prison pastor Gary Clements, his wife L. J., his son A., and his daughter or stepdaughter P. (the victim in the Solano County case). He also testified on his own behalf.

Clements testified that he had met [Avalos] in the Yolo County Jail. [Avalos] had made a commitment to the Lord. Clements felt sure that [Avalos's] conversion was genuine.

L. J. testified that [Avalos] deserved a second chance because he had changed and now felt remorse over his past acts. They had been together for 10 years when he was arrested for molesting her daughter; she had not realized it was going on until he was arrested. She knew he had drug problems and believed no one can really overcome such problems. She did not know that he had violated a parole condition by making contact with one of L. J.'s children. When they were together in 2006, she knew he had failed to register as a sex offender and kept telling him to do so, but he would not because he kept saying he had already messed up. They used methamphetamine together at that time.

A., [Avalos's] son or stepson, testified that [Avalos] was a good man who had provided for his family and should not go to prison for life. It did not change his opinion that the victims of his father's felonies were his sisters.

P., now 15 years old, testified that [Avalos] was a good father, even though he had molested her when she was in sixth grade; she forgave him and did not believe he would do it again. She had seen him in her mother's company at his workplace within the last three years.

[Avalos] testified that he was sentenced to 14 years in prison for his first felony; he served eight years and was out on parole for three years. He committed two parole violations, the first for using methamphetamine and the second for being "out of [his] area" while working. While still on parole, he was convicted again for his sexual offense against P. He was sentenced to 32 months in prison and served 28 before being released on parole in 2004. He was returned to prison again on a parole violation for using methamphetamine.

After again being released on parole, [Avalos] spent several months in a Sacramento halfway house, where he registered as a sex offender. According to [Avalos], he left in March 2005 after speaking to his parole officer and requesting "leeway" so that he could continue to work at a job in a distant part of town; he went to live with a cousin. But when he returned to his home on a visit, he saw a team of sheriff's deputies in front of the house, so he "just . . . kept walking." Then he went to Woodland, got a job, lived at his work site, tried to make ends meet, and tried to reach out to his children. He had a drug problem the whole time. Now, however, he had accepted Christ into his life, understood what he had done wrong, and wanted to stay out of prison so as to be able to help his family and do God's will.

On cross-examination, [Avalos] testified that he had told two officers in Vacaville that he was an unregistered sex offender with warrants out on him, and they did nothing. He admitted that when he moved to Woodland he was "absconding from [the] Sacramento Police Department, and . . . on the run[,]" and he gave two officers in

-3-

> Woodland a false name. He also admitted that he had sought out P. when he was on parole, despite a parole condition which forbade contact with her.
>
> Defense counsel argued that [Avalos's] conversion in jail, family support, and good work history would justify the trial court's exercise of discretion to strike one or both strikes. The prosecutor retorted that [Avalos], a multiple sexual offender whose victims were his own young children or stepchildren, consistently violated the terms and conditions of parole by using drugs and making prohibited contacts with his family; he had not been free of custody or parole since 1992; and he had lied about his identity three times to Woodland police. In short, he was exactly the type of person for whom the Three Strikes law was designed.
>
> Without stating reasons, the trial court denied [Avalos's] *Romero* motion.

*People v. Avalos*, No. C056373, 2009 WL 162907, at *1-3 (Cal. Ct. App. Jan. 26, 2009) (footnotes omitted).

Avalos filed a counseled appeal, arguing that: 1) the trial court abused its discretion in refusing to dismiss either of his two prior strikes; 2) his sentence was cruel and/or unusual under both the California and federal Constitutions; and 3) his right against double jeopardy was violated because his offense was "minor." In a supplemental brief, counsel argued that trial counsel was ineffective for not challenging the sentence as cruel and/or unusual and a double jeopardy violation. The Court of Appeal affirmed Avalos's judgment of conviction in a reasoned opinion. *Avalos*, 2009 WL 162907, at *6.

Avalos filed a counseled petition for review with the California Supreme Court, again arguing that his sentence was cruel and/or unusual and violated his right against double jeopardy. The supreme court summarily denied review.

On April 21, 2010, Avalos filed a petition for a writ of habeas corpus with the superior court, arguing that trial counsel was ineffective for failing to investigate his claim that prior to his arrest, he "was working with" law enforcement to resolve his failure to register as a sex offender. Avalos claimed that he gave counsel the name of two witnesses—a police informant,

who he now identifies as his wife, and Police Officer Whitehouse—who could verify that he approached police for help in re-registering prior to being arrested for failing to register. Avalos believed that counsel was going to call Officer Whitehouse and his wife, in her capacity as an informant, to testify at the sentencing hearing, and that their testimony would be helpful to his plea for leniency. In support of his petition, Avalos attached an affidavit from his wife, in which she declared that she arranged a meeting between Avalos and Officer Whitehouse "so that Avalos could come fix anything to do with failure to reg[i]ster." Avalos's wife further declared that she would have testified at the *Romero* hearing in her capacity as an informant if defense counsel had made arrangements to protect her identity as an informant. Avalos additionally requested an evidentiary hearing.

The People filed an informal response and attached a declaration from Officer Whitehouse. Officer Whitehouse declared that, while assigned to a narcotics enforcement team, he met with Avalos "to determine his suitability to become a confidential informant." Officer Whitehouse could "not recall [Avalos's] motivation for wanting to become a confidential informant, whether it was monetary compensation or downward departure for any pending criminal acts." He recalled Avalos mentioning "that he was a 290 registrant,"[3] but was not aware that Avalos was a wanted parolee. Had he been aware that Avalos was a wanted parolee, he would have arrested him rather than meet to discuss his suitability as an informant. Officer Whitehouse conducted a standard background investigation of Avalos after meeting with him and concluded that Avalos was undesirable as an informant due to his extensive criminal history,

---

[3] This is a reference to Avalos's lifetime duty to register as a sex offender under California's Sex Offender Registration Act. CAL. PENAL CODE § 290.

including his convictions for lewd and lascivious conduct with a minor.  On October 18, 2010, the superior court denied Avalos relief, concluding that he failed to demonstrate that counsel's representation fell below an objective standard of reasonableness and that any alleged deficiency prejudiced him.

On December 17, 2010, Avalos filed a *pro se* petition for writ of habeas corpus with the California Court of Appeal.  Avalos again argued that trial counsel was ineffective for failing to investigate Officer Whitehouse and the police informant and for failing to present evidence at the sentencing hearing that he had attempted to re-register as a sex offender prior to his arrest.  Avalos disputed Officer Whitehouse's statements as set forth in his declaration.  According to Avalos, he "did go before [he was] arrested to law-enforcement in genuinely trying to register as a sex offender."  Avalos claimed that his wife, as an informant, set up the meeting with Officer Whitehouse so that he could re-register as a sex offender, that Officer Whitehouse was aware of his intention prior to their meeting, and that Avalos began their meeting by stating, "I am a 290 unregister and can you please help me reregister."  Avalos additionally asserted that he did work for the police in some capacity as a police informant, and that he was under the impression that he would receive a more lenient sentence for the information he allegedly provided to Officer Whitehouse.  He claimed that after he was arrested and in custody, Officer Whitehouse continued to interact with him through the county "police and informant visiting procedures," and that Officer Whitehouse brought other agency representatives with him when he visited Avalos in prison.  Avalos requested an evidentiary hearing to determine counsel's reasons for failing to call the police informant and Officer Whitehouse at the sentencing hearing.  Avalos claimed that had they been called he would have been able to convince the court to dismiss a

strike.  Avalos further argued that appellate counsel was ineffective for failing to file a petition for writ of habeas corpus raising Avalos's ineffective assistance of trial counsel claims and for failing to request an evidentiary hearing.  Avalos again attached both the declarations from the police informant and Officer Whitehouse to his petition.  The California Court of Appeal summarily denied review on January 13, 2011.

Avalos then filed a petition for writ of habeas corpus with the California Supreme Court.  He raised the same arguments that he unsuccessfully raised in his previous state petitions and additionally requested an evidentiary hearing.  The supreme court summarily denied review on July 27, 2011.  Avalos filed his Petition with this Court on August 21, 2011.

## II. GROUNDS RAISED

In his Petition before this Court, Avalos again argues that trial counsel was ineffective for failing to investigate his claim that the police informant and Officer Whitehouse could corroborate that he approached the police prior to his arrest to re-register as a sex offender.  He additionally argues that his trial counsel was ineffective for failing to present any evidence at his sentencing hearing to corroborate his claim, and that had counsel done so Avalos would have received a more lenient sentence.  Avalos further asserts that his appellate counsel was ineffective for failing to raise these claims on direct appeal and for failing to file a petition for writ of habeas corpus on his behalf.  Avalos requests an evidentiary hearing.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860

(9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## IV. DISCUSSION

### A. Timeliness

Respondent argues that Avalos's Petition is untimely. This Court will not decide whether the Petition was untimely or whether Avalos's motions for post-conviction relief sufficiently tolled the statute of limitations because Avalos cannot prevail on the merits of his claims, as discussed *infra*.

### B. Merits

#### 1. *Strickland Ineffective Assistance of Counsel Standard*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Avalos must show that defense counsel's representation was not within the range

of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

> In reviewing ineffective assistance of counsel claims in a federal habeas proceeding: The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

2. *Ineffective Assistance of Trial Counsel*

Avalos first argues that his trial counsel was ineffective for failing to investigate his claim that he approached Officer Whitehouse and the police informant prior to his arrest to re-register as a sex offender.  Avalos has again attached the declaration from his wife, in her capacity as the police informant, as well as the declaration from Officer Whitehouse.  He again disputes Officer Whitehouse's statements, claiming that he asked Officer Whitehouse for help in re-registering as a sex offender and that he worked for the officer as an informant in an informal

capacity.  Although the police informant testified at the sentencing hearing in her capacity as Avalos's wife, Avalos again claims that counsel failed to additionally procure her testimony as a confidential informant in a manner that would protect her identity as an informant, such as through an in camera proceeding.  He argues that counsel's failure to present the evidence of his pre-arrest contact with law enforcement amounted to ineffective assistance.  Avalos raised these claims in his petition for habeas review filed in the state superior court, which the court denied in a brief reasoned opinion.  The court concluded that Avalos failed to prove that counsel failed to make particular investigations and that counsel's alleged omissions resulted in the denial or inadequate presentation of a potentially meritorious defense.  Avalos raised the same claims again in his petitions for habeas relief filed with the California Court of Appeal and Supreme Court, and both courts summarily denied review.

Avalos's conviction became final on April 1, 2009, when the California Supreme Court denied his petition for review.  Avalos cannot prevail on his ineffective assistance of trial counsel claim because at the time his conviction became final, the Supreme Court had "not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases[,] [and] [t]herefore, . . . there [was] no clearly established federal law as determined by the Supreme Court in this context."  *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (citing *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005)).  The *Strickland* Court "expressly declined to 'consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance.'"  *Cooper-Smith*, 397 F.3d at 1244 (quoting *Strickland*, 466 U.S. at 686)).  *But see Vigil v. McDonald*, 456 F. App'x 649, 650-51 (9th Cir. 2011) (discussing Ninth Circuit cases

concluding that there was no standard to evaluate counsel's effectiveness in non-capital sentencing cases, and discussing intervening Supreme Court case law suggesting that S*trickland* might be applicable to such cases); *Daire v. Lattimore*, No. CV 10-3743, 2012 WL 1197645, at *2-3 (C.D. Cal. Apr. 9, 2012) (acknowledging it was bound by the decision in *Davis*, but disagreeing with *Davis's* holding that the Supreme Court had not yet applied *Strickland* in non-capital sentencing proceedings).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey*, 549 U.S. at 77; *Davis*, 443 F.3d at 1158-59 (holding that petitioner could not prevail on his claim that counsel failed to investigate or present mitigating evidence at sentencing because there was no governing federal law on the matter).

Although on March 21, 2012, the Supreme Court held that the S*trickland* standard applies to ineffective assistance of counsel claims arising from both capital and non-capital sentencing proceedings, *Lafler*, 132 S. Ct. at 1385-86, this Court is barred from applying this new rule by the "non-retroactivity" principle set forth in *Teague v. Lane*, 489 U.S. 288, 310 (1989) ("new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced").  *See Gutierrez v. Grounds*, No. CV 11-4229, 2013 WL 2154123, at *7 (C.D. Cal. May 13, 2013) (court could not review petitioner's claim of ineffective assistance of counsel at non-capital sentencing proceeding because the non-retroactivity principle set forth in *Teague* precluded review under *Lafler*); *Castaneda v. McEwen*, No. CV 12-4805, 2013 WL 3524068, at *17 (C.D. Cal. July 10, 2013) (granting petitioner relief on his claim that counsel was ineffective at his non-capital sentencing

proceeding would violate *Teague's* non-retroactivity principle). Accordingly, Avalos is not entitled to relief on this claim.[4]

### 3. *Ineffective Assistance of Appellate Counsel*

Avalos next argues that his appellate counsel was ineffective for failing to file a petition for writ of habeas corpus asserting that trial counsel was ineffective and for failing to request an evidentiary hearing. He further asserts that appellate counsel failed to "raise all of the claims raised in the instant petition." Avalos raised these claims in his petitions for habeas corpus filed with the California Court of Appeal and Supreme Court, and both courts summarily denied relief.

---

[4] In any event, Avalos could not prevail on the merits of his claim. The Supreme Court has recognized that counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) ("counsel must, at a minimum, *conduct a reasonable investigation* enabling him to make informed decisions about how best to represent his client" (citing *Strickland*, 466 U.S. at 691)). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Had counsel investigated Avalos's claim, he would have found that Officer Woodhouse's testimony would not corroborate Avalos's claims that he informed the officer that he had absconded on parole and had failed to re-register as a sex offender, and that he had worked as an informant in an informal capacity in exchange for leniency. *See Shaw v. Campbell*, No. CIV S-05-1506, 2008 WL 744731, at *9-10 (E.D. Cal. Mar. 18, 2008) (assuming that an expert's testimony at an evidentiary hearing would be in conformance with his declaration). Moreover, as the Court of Appeal noted on review of its claim that the sentencing court abused its discretion in declining to dismiss one or both of Avalos's prior strikes, Avalos had been twice convicted of felony sexual offenses against his stepdaughters, he was not able to remain free of custody or parole from 1992 until his arrest for the instant offense in 2005, and each time he was paroled, he violated his parole conditions. In light of his criminal history, presenting conflicting testimony on whether Avalos had contacted police prior to his arrest to notify them that he was a wanted parolee requesting help in re-registering would not likely have been sufficient to place him outside the spirit of the Three Strikes Law. *See Lafler*, 132 S. Ct. at 1385-86. Thus, even if this Court were not barred by *Teague v. Lane* from considering his claim, Avalos would still not be able to establish that counsel's alleged deficiencies prejudiced him.

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set forth in *Strickland*, 466 U.S. 668. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). In California, where the determination of an ineffective assistance of trial counsel claim necessitates the consideration of matters outside the record (such as the existence or non-existence of a tactical basis for trial counsel's course of conduct), the claim should be raised in a state petition for writ of habeas corpus. If a petitioner otherwise directly appeals on an ineffective assistance of counsel claim and there is no record to show the reasons for counsel's challenged acts or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. *See, e.g., People v. Anderson*, 22 P.3d 347, 364-65 (Cal. 2001). Here, appellate counsel failed to file a state petition for writ of habeas corpus and request an evidentiary hearing setting forth Avalos's claims, thus ensuring that, had counsel brought the claims on direct appeal, they would have been rejected for failure to establish a record on the claim. Appellate counsel did not, however, raise these claims on direct appeal.

Avalos was not prejudiced by counsel's failure to either file a state habeas petition or to raise his ineffective assistance of trial counsel claims on direct appeal because any such claim would have been rejected. As discussed *supra*, had counsel presented a declaration or testimony from the police informant and Officer Whitehouse, it would not likely have resulted in a different outcome given Avalos's criminal history and that Officer Whitehouse's testimony would have directly conflicted with Avalos's claims. The Supreme Court has stressed that it is essential for appellate counsel to "examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). Counsel may "winnow[] out" weaker arguments on appeal and focus on key issues which present the most

promising for review. *Id.* at 751. "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985). Such is not the case here—trial counsel's alleged deficient performance did not prejudice Avalos, and appellate counsel was not ineffective for failing to raise this weak claim on direct appeal. Avalos cannot prevail on this claim.

C. Evidentiary Hearing

Avalos requests an evidentiary hearing "to estab[l]ish the truth" of his allegations and to allow trial counsel to explain why he failed to investigate and present the alleged mitigating evidence. Avalos claims that, had counsel investigated and presented evidence in support of his mitigation claim, the outcome of the sentencing proceeding would have been different.

"To obtain an evidentiary hearing in district court, a habeas petitioner must, in addition to showing diligence in state court, allege a colorable claim for relief." *West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474-75 (2007); *Earp v. Ornoski*, 431 F.3d 1158, 1167 (9th Cir. 2005)). To allege a colorable claim, he must allege facts that, if true, would entitle him to habeas relief. *Landrigan,* 550 U.S. at 474. Thus, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," and whether those allegations, if true, would entitle him to relief. *Id.* "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

evidentiary hearing." *Id.* Furthermore, because the AEDPA's deferential standards "control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*; *see also Earp,* 431 F.3d at 1166-67.

Even if Avalos could establish in an evidentiary hearing that counsel conducted no investigation of his claim, he could not establish that counsel's failure to call Officer Whitehouse and his wife, in her capacity as an informant, would have prejudiced him. As discussed *supra*, although his wife was supposedly prepared to testify that she set up a meeting between Avalos and Officer Whitehouse so that Avalos could reach out for help in re-registering, Officer Whitehouse's testimony would have directly conflicted with Avalos's claim that he confessed that he was a wanted parolee who had failed to re-register as a sex offender and that he worked in some capacity as an informant with the understanding he would receive leniency for the information he provided. It is not likely that, given Avalos's criminal history, the introduction of Officer Whitehouse's conflicting testimony would have convinced the trial court that dismissal of a strike was warranted. Thus, this Court declines to grant an evidentiary hearing.

## V. CONCLUSION

Avalos is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Avalos's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 30, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge